**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St., #80594
San Francisco, CA 94104
Telephone:  (415) 488-8041
Facsimile:   (415) 651-9700
*Attorneys for Plaintiffs*,
Leo Byrne and Minor Child D.B.

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LEO BYRNE AND MINOR CHILD D.B.**, <br><br>Plaintiffs, <br><br>v. <br><br>**EXPRESS SCRIPTS, INC., ACCREDO HEALTH GROUP, INC., AND NATIONAL RECOVERY AGENCY**, <br><br>Defendants. | **Case No.:** 8:22-cv-00934 <br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** <br><br>1.) **FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692 ET SEQ.; AND** <br><br>2.) **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL CIV §§ 1788, ET SEQ.** <br><br>3.) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br><br>4.) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br>5.) **NEGLIGENCE** <br><br> **DEMAND FOR JURY TRIAL** |

///

///

///

**COMPLAINT FOR DAMAGES**

## INTRODUCTION

1. This is a case about two pharmacies and their collection agency who failed to properly bill the co-pay assist program for a local fireman and his disabled son. The patients properly provided their co-pay assist program information, it was acknowledged by the pharmacies on numerous occasions, yet the pharmacies sent the improperly billed co-pays to collections anyway, causing the fireman to forego and/or be denied medicine he and his disabled son both desperately needed.

2. **LEO BYRNE** ("Plaintiff Byrne") **and MINOR CHILD D.B.** ("Plaintiff Minor Child") (collectively referred to as "Plaintiffs"), by their attorney, bring this action for punitive damages, actual damages, statutory damages, attorneys fees, and costs, against **EXPRESS SCRIPTS, INC.** ("Defendant ESI"), **ACCREDO HEALTH GROUP, INC.** ("Defendant AHG") **and NATIONAL RECOVERY AGENCY** ("Defendant NRA") (collectively referred to as "Defendants") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq. ("RFDCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive and unfair practices, and the torts of Negligence, and Intentional Infliction of Emotional Distress.

3. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiffs, or to the Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

///

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of those Defendants named.

## JURISDICTION AND VENUE

7. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

8. This action arises out of Defendants' violations of the FDCPA, the RFDCPA, and the torts of Negligence, and Intentional Infliction of Emotional Distress.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

## FDCPA AND RFDCPA

10. In enacting the FDCPA, Congress found that:
    a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
    b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
    c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
    d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such

commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses. 15 U.S.C. § 1692.

11. Similarly, when enacting the RFDCPA, the California Legislature found that:

> The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civil Code § 1788.1(a)(1).

12. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

13. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have

likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

### PARTIES

14. Plaintiffs Leo Byrne and Minor Child D.B. are natural persons who reside in Orange County, California. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and "Debtors" as that term is defined by California Civil Code § 1788.2(h). Plaintiff Minor Child is a "disabled persons" as that term is defined in subdivision (g) of Cal. Civ. Code § 1761.

15. Defendant Express Scripts, Inc. is a Delaware corporation operating from an address of One Express Way, St Louis, MO 63121, and is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It attempts to collect debts from consumers in virtually every state, including consumers in the State of California. One of its primary business purposes is the collection of defaulted consumer debts, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiffs.

16. Defendant Accredo Health Group, Inc. is a Delaware corporation operating from an address of One Espress Way, St. Louis, MO 63121, and is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It attempts to collect debts from consumers in virtually every state, including consumers in the State of California. One of its primary business purposes is the collection of defaulted consumer debts, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiffs.

17. Defendant National Recovery Agency is a Pennsylvania corporation operating from an address of 2491 Paxton Street, Harrisburg, PA 17111, and is a "Debt

Collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of California. Its principal, if not sole, business purpose is the collection of defaulted consumer debts originated by others, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiffs.

18. This case involves money due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

19. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned Named Defendants were agents, officers, directors, managing agents, employee and/or joint venturer of each of their co-defendants and, in doing the things hereafter mentioned, each was acting in the scope of his authority as such agent, officer, director, managing agent, employee, and/or joint venturer, and with the permission, knowledge, ratification, and consent of their co-defendants, and each of them. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiffs to refer to each Defendant, and all of them, named above.

## FACTUAL ALLEGATIONS

20. Plaintiffs are individuals residing in Orange County, California.

21. Plaintiffs are informed and believe, and thereon allege, that at all times relevant, Defendants conducted and continue to conduct business in the State of California.

22. One of Defendant ESI's primary business purposes is the collection of defaulted consumer debts. ESI collects defaulted consumer debts on a regular basis.

23. One of Defendant AHG's primary business purposes is the collection of defaulted consumer debts. AHG collects defaulted consumer debts on a regular basis.

24. Defendant NRA's business consists solely of the acquisition and collection of delinquent consumer debts.

25. Plaintiff Byrne was prescribed a monthly injection of Simponi for his arthritis, which he needed to be able to properly perform his duties as a fireman.

26. Plaintiff Minor Child is Plaintiff Byrne's son. He is disabled and unable to speak, and suffers from, among other things autism, epilepsy, and ulcers. He was prescribed Humira monthly, which he needed to assist with his numerous medical conditions.

27. Both Plaintiffs' monthly medications were mailed to Plaintiffs' house monthly, and each month Defendants AHG and ESI would call Plaintiff Byrne to ask if he was ready for the next month's medication to be sent out.

   a. Every month, Defendants AHG and ESI would ask Plaintiff Byrne for the $200 co-pay for each medication, and Plaintiff Byrne would always respond by telling them he had a co-pay assist program they needed to bill through Janssen Care Path ("JCP").

   b. Each month, the AHG/ESI representative would acknowledge that the JCP card was on file, and sometimes the representative would properly bill JCP for the co-pay.

   c. Sometimes, however, the AHG/ESI representative would *not* properly bill JCP for the co-pay, and the following month Plaintiff Byrne would be asked for the co-pay for each medication for that month and the month prior (sometimes this went on for more than two months at a time) because the co-pay assistance program was not properly billed, and Plaintiffs were being improperly held responsible for a co-pay they did not owe.

///

28. AHG and ESI's attempts to collect the co-pays from Plaintiffs violated 15 U.S.C. §§ 1692d, 1692e, 1692e(10), 1692f, and 1692f(1).

29. As of October 13, 2021, Defendant NRA was attempting to collect $948.33 from Plaintiffs for several months of improperly billed co-pays.

    a. Defendant NRA has called Plaintiff Byrne on the following dates: November 15, 2021, December 3, 2021, December 15, 2021, December 28, 2021, December 28, 2021, January 14, 2022, January 18, 2022, and January 31, 2022.

30. By continuously calling Plaintiff Byrne in an attempt to collect a debt not owed by Plaintiffs, NRA violated 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(10), 1692f, and 1692f(1).

31. Plaintiff Byrne also received another bill dated October 8, 2021, from AHG/ESI for $200.

32. AHG/ESI also caused Plaintiff Minor Child to not receive his Humira medication for four weeks because they failed to apply the co-pay assist information to his prescription.

    a. AHG/ESI refused to send an emergency dose until the improperly billed co-pays were brought to a zero balance. Getting the co-pay balance to zero took seven to ten business days.

    b. However, Plaintiff Minor Child never had a balance on *his* account regarding *his* prescriptions, because the co-pay assistance was there to pay for his co-pays.

    c. This caused Plaintiff Minor Child to be at risk of having to start the medication protocol from the beginning again, his inflammation skyrocketed and because he is nonverbal, he was unable to communicate this to his parents or others with words – so he reacted with aggression and violence. During the time Plaintiff Minor Child missed his medication because of AHG/ESI's and NRA's improper collections,

      there were aggression incidents at school, at the park, and at home, and Plaintiff Minor Child had an increased amount of seizures due to the stress and anxiety related to the medical repercussions of missing several doses of Humira.

33. As a result of AHG and ESI withholding medication from Plaintiffs due to an alleged balance being owed, AHG and ESI acted deceptively in violation of 15 U.S.C. §§ 1692e and 1692e(10).

34. AHG and ESI's actions in withholding medication from Plaintiffs were harassing, and therefore violated 15 U.S.C. §§ 1692d.

35. AHG and ESI's actions in withholding medication from Plaintiffs were unconscionable and unfair, and therefore violated 15 U.S.C. § 1692f.

36. The time and effort it took for Plaintiff Byrne to make phone calls to AHG/ESI, when they would tell him each time it was fixed (but it never was), caused Plaintiff Byrne to decide to go without the medication and suffer the pain of his arthritis.

37. Plaintiffs and their other family members moved into Plaintiff Byrne's mother-in-law's house in order to save money for these medications, in part due to the improper collections being inflicted on them by AHG/ESI, and their collector NRA. There are now seven people, including the disabled Plaintiff Minor Child, living at Plaintiff Byrne's mother-in-law's house.

38. Defendants' despicable and outrageous conduct was performed knowingly, deliberately and willfully, with reckless disregard of the probable consequences, were oppressive to Plaintiffs, and were malicious in that Plaintiffs' suffering as a result of Defendants' conduct was a virtual certainty.

## ACTUAL DAMAGES

39. Plaintiff has suffered actual damages as a result of these illegal collection and intimidation tactics by these Defendants in the form of invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional

distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions, as well as severe emotional distress and physical injury.

### PUNITIVE DAMAGES

40. Defendants' conduct was willful, repetitive, and outrageous and akin to the common law torts of, inter alia, invasion of privacy, defamation, and conversion.

### CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATION OF § 1692E OF THE FDCPA

### (AGAINST NRA ONLY)

41. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. A debt collector violates § 1692e of the FDCPA when it uses any false, deceptive, or misleading representation or means in connection with the collection of any debt.

43. Defendants each violated § 1692e when each, among other qualifying actions and omissions, willfully misrepresented the character, amount, or legal status of the debt, to wit: that Plaintiffs owed the debt to the Defendants when they do not.

### COUNT II

### VIOLATION OF § 1692F OF THE FDCPA

### (AGAINST NRA ONLY)

44. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

45. A debt collector violates § 1692f of the FDCPA when it uses unfair or unconscionable means to collect or attempt to collect any debt.

46. Defendants each violated § 1692f when each, among other qualifying actions and omissions, willfully and without justification, attempted to collect amounts from

///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Plaintiffs that were not authorized to be collected from Plaintiffs by agreement or law.

## COUNT III

### VIOLATION OF § 1692D OF THE FDCPA

47. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

49. As a result of NRA's continued collection attempts of a debt now owed by Plaintiffs, NRA violated 15 U.S.C. § 1692d and 1692d(5).

## COUNT IV

### VIOLATION OF § 1788.17 OF THE RFDCPA

### (AGAINST ALL DEFENDANTS)

50. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. A defendant violates § 1788.17 of the RFDCPA when it fails to comply with the provisions of 15 U.S.C. § 1692b to 1692j, inclusive.

52. Defendants each violated § 1788.17 of the RFDCPA when they willfully engaged in conduct, the natural consequence of which the violation of 15 U.S.C. § 1692d, 1692d(5), 1692e, 1692e(1) 1692f and 1692f(1).

## COUNT V

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (AGAINST ALL DEFENDANTS)

53. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. Negligent infliction of emotional distress results from the causation of severe emotional distress through negligent action.

55. Defendants acted at the very least negligently by harassing Plaintiffs to pay for medication when Plaintiffs did not owe the debt.

56. AHG and ESI acted at the very least negligently by improperly withholding medication from Plaintiffs.

As a result of Defendants' actions and inactions, Plaintiff Byrne and Plaintiff Byrne's son suffered severe emotional, mental, and physical distress.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (AGAINST ALL DEFENDANTS)

57. A defendant is liable for the tort of intentional infliction of emotional distress when, through its outrageous conduct committed with reckless disregard of the probability that the victim would suffer emotional distress, and that conduct is a substantial factor in causing the victim's severe emotional distress.

58. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. Defendants knew when they attempted to collect from Plaintiffs that Defendants knew of and had a duty to bill Plaintiffs' co-pay assist program, JCP. Defendant also had reason to know that Plaintiff Byrne had a disabled minor child, was working as a firefighter, and was thus at a relative disadvantage to contest their claims that he owed them money. Defendants also had reason to believe that Plaintiff Minor Child is disabled and a minor, and was thus at a relative disadvantage to contest their claims that he owed them money.

60. Defendants' continued collection of an amount not owed by Plaintiffs was outrageous, especially because 1. they caused Plaintiff Minor Child a significant amount of medical issues because Defendants refused to send emergency doses of a necessary medication; and 2. They caused Plaintiff Byrne to go without his medication causing him physical and emotional pain and suffering because of the collections issue.

61. Defendants were aware of the medical conditions of both Plaintiffs, and acted with reckless disregard of the probability that both Plaintiffs would suffer emotional distress, knowing that both Plaintiffs would be affected by their conduct.

62. Plaintiffs both suffered severe emotional distress, and it was a direct result of Defendants' improper collections of amounts Plaintiffs did not owe – which resulted in the withholding of essential medication.

## COUNT VII

### NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

63. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. A defendant is liable for the tort of negligence when it fails to use reasonable care to prevent harm to others, and when the defendant's actions or failure to act is a substantial factor in causing harm to the Plaintiffs.

65. Defendants violated at least one of their general duties of care to Plaintiffs when they, inter-alia, willingly continued to attempt to collect amounts from Plaintiffs, for Plaintiff Byrne's and his disabled son's co-pay when they knew of and had a duty to bill Plaintiffs' co-pay assist program, JCP.

66. As a direct result of Defendants' lack of due care, Plaintiffs suffered actual damages in an amount to be proven at trial, that included both physical harm and emotional distress because essential medications were withheld pending payment of a debt not owed by Plaintiffs, and the process to fix Defendants' improper collections was so onerous that it caused an inordinate amount of stress and anxiety to both Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that judgment be entered against each Defendant for:

a) Award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for each Plaintiff, and,

b) Award of statutory damages in the amount of $1000.00 pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against each Defendant and for each Plaintiff, and,

c) Award of statutory damages in the amount of $1000.00 pursuant to Cal. Civ. Code § 1788.30 (RFDCPA) against each Defendant and for each Plaintiff, and,

d) Award of Treble damages pursuant to Cal Civ §3345, and

e) Award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for each Plaintiff, and,

f) Award for pre-judgment interest against each Defendant and for each Plaintiff, and,

g) Award of exemplary and punitive damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 3924 against each Defendant and for each Plaintiff, and,

h) Award of compensatory damages for losses, in an amount to be determined at trial, pursuant to the common law of torts against each Defendant and for each Plaintiff, and

i) Award for interest on the amount of losses incurred at the prevailing legal rate against each Defendant and for each Plaintiff, and

j) Award to Plaintiff of such other and further relief as may be just and proper.

///

///

///

## TRIAL BY JURY IS DEMANDED

67. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**THE CARDOZA LAW CORPORATION**

DATED: May 5, 2022

BY: /s/ Lauren B. Veggian
Lauren B. Veggian, Esq.
Michael F. Cardoza, Esq.
Attorneys for Plaintiffs
Leo Byrne and Minor Child D.B.

## ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.

ELECTRONICALLY STORED INFORMATION REQUEST